UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08CV-510-H

ALBERT B. WILLIAMS, JR.
LIBERTY MUTUAL INSURANCE CO.                                        PLAINTIFFS

V.

TLD AMERICA CORPORATION                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Albert B. Williams, Jr., ("Williams"), brings this negligence action against Defendant TLD American Corporation, ("TLD America"), based on injuries he sustained in a fall from an airplane loader in August 2007. The matter is now before the Court on Plaintiff's Motion for Leave to File a First Amended Complaint joining two additional parties. The first new party, TLD Lantis, ("TLD Lantis"), is the manufacturer of the loader. The second new party, TLD (USA), Inc. ("TLD USA") is the parent company of TLD Lantis and current Defendant TLD America. Plaintiff urges the Court to allow the naming of the new parties to relate back to the filing date of the original Complaint under Federal Rule of Civil Procedure 15(c). For the reasons that follow, the Court will permit Plaintiff to amend his Complaint and add the new parties.

I.

On August 16, 2007, Plaintiff Williams, an employee of United Parcel Service, Inc. ("UPS"), sustained injuries during a fall at work. At the time of the accident, Plaintiff was using a Model No. 929 "K" Loader, which is a motorized platform that elevates workers to an

airplane's cargo door so they can load and unload containers. Plaintiff was recording the weights of various containers when he fell through an opening in the front of the loader's platform, sustaining serious injuries. The Occupational Safety and Health Administration, ("OSHA") investigated the accident and issued a report identifying TLD America as the manufacturer. The report also contained references to communication with TLD America employees Mike Rawls and Mark Blalock.

Plaintiff filed suit against TLD America, alleging negligence and strict liability, on August 15, 2008, one day before the expiration of the statute of limitations period. His Complaint asserted that Defendant TLD America was the designer, manufacturer, marketer, assembler and distributor of the "K" Loader. In TLD America's October 1, 2008 Answer, the company denied that it took part in the design or manufacture of the product. Nonetheless, the parties filed an Agreed Litigation Plan shortly thereafter that described the claims at issue as: "Negligent design, manufacture, marketing, assembly, and distribution of a TLD "K" Loader used for loading aircraft which allegedly caused injury to Plaintiff when he fell through an opening between the fuselage of an aircraft and the front of the loader." Of course, these are all claims that TLD America denies.

In February 2009, TLD America filed its initial disclosures,[1] including purchase order documents for the "K" Loader. The documents were Bate Stamped 000382-000387. The first two pages of the purchase order included a "TLD Deutec" logo at the top and appeared to be

---

[1] In its earlier Rule 26(a)(1) disclosures, Defendant TLD America listed various persons likely to have discoverable information, including representatives of TLD Canada, TLD ACE and TLD America. No mention was made of TLD Lantis.

directed to "TLD Lantis," with an address in Salinas, California.[2] At the very top of those pages, a fax notation read "FR TLD AMERICA SALES ... TO LANTIS." Also included in TLD America's initial disclosures was an Operating Manual for the "K" Loader. Though the words "TLD Lantis" appeared on some of the pictures, TLD Lantis was not identified as the manufacturer. A "Manufacturer's Appendix" to the Operating Manual contained no documents.

Later, in a July 28, 2009 letter to Plaintiff's counsel, counsel for TLD America referenced the initial disclosures, and stated:

> We can confirm that we will be producing two TLD America employees to respond to the 10 areas listed in your proposed notice with the following caveat. TLD America did not design or manufacture the subject K-loader. We have already produced documents which indicate the manufacturer of the subject K-loader. See TLD 000382-000387.

The issue arose again, though it was not absolutely clarified, during the September 1, 2009 depositions of TLD America employees Mark Blalock and Mike Rawls. Both Rawls and Blalock testified that the subject "K" loader was manufactured by a company called TLD Lantis.[3] Blalock identified Lantis as a company acquired by TLD America in 1994, but said he wasn't sure whether TLD Lantis was a separate company from TLD America in 2000, the year the relevant "K" loader was built.[4] As for the numerous TLD entities, Blalock described TLD as "the culmination of several different companies."

---

[2] The "Locations" page on TLD's Web site identifies a Salinas, California office as "TLD America - Salinas."

[3] Somewhat confusingly, Blalock also testified that the type of "K" loader at issue in this lawsuit was built in Sherbrook, Quebec, where TLD Canada is located. He identified TLD Canada as a "sister company" to TLD America. Blalock said there were numerous sister companies with "TLD" in the name, including TLD Europe, TLD Asia, TLD Shanghai and TLD Saint-Lin.

[4] Plaintiff contends there is still confusion about whether TLD America, TLD USA and TLD Lantis are essentially the same entity.

3

At the time of those depositions, Plaintiff's counsel served Requests for Production of Documents and Interrogatories on TLD America. The company's October 15, 2009 responses reiterated that TLD Lantis manufactured the loader. On October 30, 2009 – the last day for joining new parties – Plaintiff filed his motion to amend the Complaint to add TLD Lantis and TLD USA as Defendants. The registered address of the new Defendants is the same as that of the original Defendant, TLD America. TLD America objects to the addition of new parties, arguing that Plaintiff's claims against TLD Lantis and TLD USA are time-barred under the one-year statute of limitations because the federal rules do not allow relation back under these circumstances.

II.

The Court will first consider the circumstances under which the addition of a new party will "relate back" to the date of the original Complaint under Federal Rule of Civil Procedure 15(c). Because the Plaintiff filed suit in state court only one day before the end of the limitations period, the addition of new parties is only permitted if there is an applicable exception to the statute of limitations. Rule 15(c) offers such an exception. It provides:

> (1) *When an Amendment Relates Back.* An amendment of a pleading relates back to the date of the original pleading when:
> ...
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against

it, but for a mistake concerning the proper party's identity.[5]

Rule 15(c)(1)(C) creates a two-pronged test – both notice to the new defendants and knowledge of the plaintiff's mistake are required. As for the notice prong, Sixth Circuit cases indicate that unnamed defendants do not have to receive actual notice of the action. *Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986) (citations omitted). Constructive notice is enough. *Id.* Here, the companies are related in such a way that notice to TLD America constitutes notice to TLD USA and TLD Lantis. To start, the companies are part of the same larger corporate structure. They all use the same registered address, to which Plaintiff sent his original Complaint. On the TLD website and in depositions, TLD America employees refer to the companies interchangeably. All of these factors weigh in favor of finding that TLD Lantis and TLD USA received constructive notice of the present action.

As for the second prong – whether the parties knew they would have been sued, but for a mistake – it was clear from the time of the Complaint that Plaintiff intended to bring an action against the manufacturer. Additionally, Plaintiff continued to treat the case as a manufacturing or design defect, rather than just an improper service complaint. Both the text of the agreed

---

[5] The U.S. Supreme Court, in *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986), described the test this way:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

The Sixth Circuit has made it clear that courts should use a liberal standard when determining Part 1 of the test – whether claims arise out of the conduct set forth in the original pleading. *See Hall v. Spencer County*, 583. F3d 930, 934 (6th Cir. 2009). That standard was met here – the new claims arise out of the previously alleged conduct. Additionally, the Court agrees with Plaintiff that *Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986), allows knowledge by TLD America to be imputed to the new Defendants. Thus, Part 4 of the test was met because TLD America was on notice within the limitations period. As such, the Court will focus its analysis on the remaining two prongs. Fed. R. Civ. P. 15(c)(1)(C)(i-ii).

litigation plan, and the nature of Plaintiff's interrogatories and requests for production bear this out. TLD America knew of Plaintiff's belief. Under *Berndt*, knowledge of TLD America can be imputed to the new Defendants. 796 F.2d at 884 (when permitting Plaintiff to add additional defendants who were employees of the original Defendant, the state of Tennessee, the Court said "where the complaint alleges in substance that the new defendants committed the illegal acts and are officials of the original defendant, that relationship may imply receipt of sufficient notice."). Here, the close relationship between the new parties and TLD America allows the court to impute receipt of notice.

In arguing that this is not an appropriate application of 15(c) Defendant relies upon *Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996) for the idea that *adding*, rather than *replacing*, a party is improper under Rule 15.[6] In *Cox*, the Sixth Circuit concluded that an amendment replacing a "John Doe" defendant with that of a named party amounts to adding a party. Such a use is impermissible under Rule 15(c), the Court reasoned, because it does not satisfy the Rule's "mistaken identity" requirement. The logic of *Cox* is reasonable in its circumstances: where a potential defendant is unknown and a "John Doe" is listed merely as a place holder, the identity of the defendant is not "mistaken" in the context of Rule 15, but is, in fact, unknown. The Court declines, however, to apply *Cox* directly to these circumstances. Here, Plaintiff sued a corporate entity it believed to be both the servicer *and* the manufacturer of the offending product. The Plaintiff was mistaken about the fact that the manufacturer and service company were separate

---

[6] There may be a split in the Sixth Circuit on this point. *See Berndt*, 796 F.2d at 884 (allowing the addition of new parties based on mistake)*; see also Daily v. Monte*, 26 F.Supp.2d 984, 987 (E.D.Mich1998)("Based on the foregoing, I find that *Cox* represents a departure from previous interpretations of Rule 15(c), and I am persuaded by the reasoning of the *Berndt* and those cases upon which it relied."). This Court has previously indicated that it sees *Cox* as distinguishable from the case at hand in *Holt v. TEK*, No. 3:03CV-745-H, 2005 U.S. Dist. LEXIS 28010 at *4 (W.D.Ky. Nov. 1, 2005).

legal entities. Such a mistake is sufficient to meet the second prong of the Rule 15(c)(1)(C) test.[7] The circumstances are materially different than those in *Cox*.

Though the Court finds that both the first and second prongs of 15(c) are met, it will also address Defendant's equity-based argument that Plaintiff waited too long to file his motion considering when he knew or should have known of his mistake.

III.

Defendant TLD America also makes an equity-based argument that Plaintiff should have known of his mistake by October 2008 – when Defendant filed its Answer denying that it manufactured the product – or at least by February 2009, when Defendant submitted its initial disclosures. Plaintiff responds that it did not know Defendant was asserting that *another company*, named TLD *Lantis,* was the manufacturer of the "K" Loader until October of 2009. After a review of the many exhibits and references throughout this case to "TLD Lantis" the Court concludes that, at the earliest, Plaintiff could have known by July 2009 that TLD Lantis was the manufacturer and was a distinct entity from TLD America.

Though Plaintiff was on notice by October 2008 that Defendant TLD America was denying it was the manufacturer, the OSHA report indicated otherwise. The first reference to TLD Lantis came in February 2009, when TLD America provided its initial disclosures,

---

[7] The Court reaches this conclusion notwithstanding the decision of a district court from this circuit. *Lee v. Toshiba Machine Co. of America*, 804 F.Supp. 1029 (E.D. Tenn. 1992). In *Lee*, the district court determined that the replacement of two American Toshiba entities with two Japanese Toshiba entities amounted to adding parties and, therefore, the amendment did not relate back under 15(c). The court concluded that "plaintiff was simply in error about who manufactured what. There was no misnomer." *Lee*, 804 F.Supp. at 1035. In this Court's view, the *Lee* approach is too narrow. Rule 15(c) does not focus literally on whether a party is added or a name changed, but rather focuses upon the changing of a name that arises from a mistaken identity.

including the purchase order documents.[8] Those documents fall short of clearly showing that TLD Lantis was the manufacturer or even a separate company, especially in light of the web of TLD-affiliated entities, and the unclear nature of the purchase order. The July 28, 2009 letter from TLD America's counsel to Plaintiff's counsel went much further in clarifying the issue. There, counsel clearly denied being the manufacturer and referenced the purchase order documents by number, asserting that they "indicate the manufacturer of the subject K-loader." Nonetheless, Plaintiff appears to assert he did not know that TLD America was asserting TLD Lantis was a separate company until October 15, 2009 when America employee Mark Blalock confirmed it in answers to interrogatories. While that may be true, Plaintiff could have known by counsel's July 28, 2009 letter that additional parties were necessary. Thus, the Court finds that Plaintiff's October 30, 2009 motion was filed three months after this realization.

Granting a motion to amend is a matter of the Court's discretion. Fed. R. Civ. P. 15(a). Here, Plaintiff has met the relation back requirements of Rule 15(c), but his motion was filed three months after he should have known that additional parties were necessary. After considering the various interests of the parties, the Court does not believe the three-month delay created any injustice on the Defendants.[9] Thus, Plaintiff is granted leave to amend his claim.

Being otherwise sufficiently advised,

---

[8] Though the briefs identify other instances where the words "Lantis" "Lantis loader" or "TLD Lantis" were used, the Court focuses on the February, July and October documents because they arguably show that Lantis is the manufacturer. The other Lantis references are ambiguous; they could easily be interpreted as reference to a brand or product name, rather than a manufacturing company.

[9] This Court has come to a different conclusion regarding a one-year delay. *See Holt v. TEK*, No. 3:03CV-745-H, 2005 U.S. Dist. LEXIS 28010 at *8-9 (W.D.Ky. Nov. 1, 2005).

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File an Amended Complaint joining new parties is SUSTAINED.

This is NOT a final order.

cc: Counsel of Record